# Stephen-Putney Shoe Co. *v.* White, *et al.*

## *Ejectment.*

(Decided May 11, 1911.  55 South. 503.)

1. *Homestead; Exemptions; Necessity of Selection.*—Under section 205, Constitution 1901, and section 4160, Code 1907, where a resident debtors' land does not exceed the area or value limit therein specified, no selection is necessary to render it exempt from sale on execution.

2. *Same; Waiver.*—Exemptions declared by section 4160, Code 1907, are waived if the debtor moves out of the state permanently, or if he abandons the homestead and remains in the state without filing a declaration of homestead exemptions as provided by the statute.

3. *Same; Acknowledgment by Wife; Non-Joinder of Husband.*—Where the husband's name appeared as grantor in the body of the deed as the husband of the married woman who was executing it, an omission of the name of the husband from the certificate of separate acknowledgment of the wife to a conveyance of the homestead, did not render the conveyance or the acknowledgment void.

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Ejectment by the Stephen-Putney Shoe Company against William Wilburn White, as landlord, substituted. Judgment for defendant, and plaintiff appeals. Affirmed.

The facts seem to be that the appellant secured on October 14, 1908, a judgment on open account against W. S. Gay and M. A. McNeal, partners under the firm name of W. S. Gay Lumber Company. The judgment was subsequently recorded in the county in the office of the judge of probate on November 5, 1908, and placed in the hands of the sheriff on November 9, 1908, an execution from such judgment, which he levied on January 6, 1909, upon the land in suit as the property of W. S. Gay. Judicial sale was had on March 1, 1909, and the plaintiff became the purchaser and received the sheriff's

[Stephen-Putney Shoe Co. v. White, et al.]

deed to same. On December 7, 1908, W. S. Gay and wife executed and delivered to White, the appellee, a deed to the above land with general warranties, etc., and the acknowledgment of the wife was separate and apart from the husband and in proper form. It further appears that Gay and wife were in possession of the land during the months of October and November, 1908, and were living on the land as their homestead until about December 16 or 20, 1908; that it was all the land he had, and that it was less in area than 160 acres and not worth exceeding $1,200. It further appeared that he had filed no declaration of claim of ownership before or after date of the making of deed to White.

HYBART & SOWELL, for appellant. The court should have excluded the deed to W. W. White.—76 Ala. 356; 80 Ala. 258; 132 Ala. 361. Homestead is a constitutional and statutory creation and must be exercised in the particular mode appointed.—21 Cyc. 480; 98 Ala. 443; 91 Ala. 599. The plaintiff was entitled to the general charge.—*Clark v. Spencer*, 112 Ala. 314; 21 Cyc. 481; 62 Am. Dec. 705.

BARNETT & BUGG, for appellee. One who owns a homestead less in area and value than prescribed by the Constitution and statutes may sell the same without prejudice to his creditors.—*Pollack v. McNeel*, 100 Ala. 203. The omission of the name of the husband did not render either the deed or the acknowledgment void.— *Sharpe v. Orme*, 61 Ala. 263; *Carlisle v. Carlisle*, 78 Ala. 544; *Frederick v. Wilcox*, 119 Ala. 355.

MAYFIELD, J.—The important question for decision in this case is whether or not an actual or formal claim and selection of a homestead, as is provided for in our statutes (Code 1907, § 4168 et seq.), is necessary

to protect it from execution sale, when it is at the time impressed with the character of a homestead, not exceeding the value or area exempted by the Constitution and the statutes, and constituting all the realty owned by the claimant. The decisions of this court upon this question are in apparent, but not real, conflict. For example: It was ruled by this court at a very early date that the benefit of the homestead law is lost if the claim of exemptions is not brought to the notice of the proper officer or person before execution or judicial sale, and that it was no excuse that the defendant did not know of the levy upon such property.—*Bell v. Davis*, 42 Ala. 460; *Gresham v. Walker,* 10 Ala. 370; *Simpson v. Simpson,* 30 Ala. 225. While, on the other hand, it was ruled by this court (*Pollak v. McNeil,* 100 Ala. 203, 207, 13 South. 737) that where the area and value of a homestead does not exceed the limit allowed by law as exempt, and is not a part or parcel of a larger portion of land, a selection is unnecessary; that the law intervenes and attaches the right of exemption, without any act on the part of the exemptioner, as if the particular property were especially claimed and designated as exempt—citing *Alley v. Daniel,* 75 Ala. 406; *Nance v. Nance,* 84 Ala. 375, 4 South. 699, 5 Am. St. Rep. 378; *Jarrell v. Payne,* 75 Ala. 579; *Hardin v. Pulley,* 79 Ala. 387; *Chandler v. Chandler,* 87 Ala. 303, 6 South. 153. It will be found, on an examination of the decisions of this court upon the question, that there have been a great many more decisions following these two respective and apparently conflicting lines of decisions. Some of them, however, on each line, relate to personal property, and some to the exemption rights of the widow or minor.

If the provisions of the Constitution and of the statutes on this subject had been the same, during the en-

tire history of the state and the time of these decisions, there would be no doubt that the apparent conflict would be real; but the decisions in each line of cases were correct. We had no constitutional provisions as to exemption of property prior to 1868; but ever since that time such provisions have been practically the same, so far as this question is concerned. All the subsequent Constitutions have adopted these provisions. The statutory provisions were properly, if not necessarily, changed in order to make effective the constitutional provisions. For example: The Code of 1852 (section 2462) provided, among other things, as follows: "The following property may be permanently retained for the use of every family in the state, exempt from levy and sale by any legal process." And, after enumerating certain articles of personal property, section 4 further exempts "such real property as may be selected by the head of the family to include the homestead, not exceeding forty acres, and in value not to exceed five hundred dollars." This section of the Code of 1852 was brought forward into the Revised Code of 1867 as section 2880, practically in its same form. The Constitution of 1868 (article 14, § 2) provided, among other things, that "every homestead not exceeding eighty acres of land and the dwelling and appurtenances thereon, *to be selected by the owner thereof* [italics supplied], * * * shall be exempt from sale on execution or any other form of process."

As before stated, these constitutional provisions, with amendments, were brought forward into the Constitutions of 1875 and 1901 (Const. 1875, art 10, § 2; Const. 1901, § 205). Evidently on account of these provisions, the Code of 1876 provided, among other things, that "the homestead of every resident of this state, not exceeding one hundred and sixty acres of

land, and two thousand dollars in value, *to be selected by the owner* [italics ours],    *    *    *    shall be exempt from levy and sale under execution or other process, for debts contracted after April 23, 1873." This change was in accord with the act of February 9, 1877 (Laws 1876-77, p. 32, § 2). These statutes have been amended from time to time—at nearly every session of the Legislature—but not so as to affect the question here under consideration. Section 4160 of the Code of 1907 provides that "the homestead of every resident of this state, with the improvements and appurtenances, not exceeding in value two thousand dollars, and in area one hundred and sixty acres, shall be    *    *    * exempt from levy and sale under execution or other process," etc.

So it seems that the effect of the constitutional and statutory provisions above referred to was, ex proprio vigore, to exempt the homestead (if such there was as a distinct entity) from levy and sale under judicial process, and to place it as much beyond the influence of an execution as if it were the property of a stranger. Execution in the hands of the sheriff, in such cases, fastens no lien upon the property so held, either on the life estate or on the remainder. The exemptioner in such case could sell the land or property so held, and invest a good title in the purchaser, to the same extent and with the same limitations on his power of disposition, as would be the case if his debt was not in execution, or was not reduced to judgment. It has been repeatedly held by this court that in such case he could sell the entire property for a valuable consideration, and that there would be no fraud, actual or constructive, in the transaction. In fact, it was said by this court, in the case of *Pollak v. McNeil,* 100 Ala. 203, 13 South. 937, that the question of whether a party who owns and oc-

cupies a homestead within the limits allowed by law may sell and convey the same, had been so repeatedly decided in the affirmative that the court had no disposition to discuss it further or to review the rulings thereon, and that the question must be regarded as settled in this state. In that case the exemptioner had made no actual or formal claim or selection, as is provided for in section 4168 et seq. of the Code. The facts in that case and those in the case of *Bell v. Davis*, 42 Ala. 460, are similar, and are like the facts in the case under consideration; yet the decision in *Bell v. Davis* held exactly the converse of what was decided in *Pollak v. McNeil*. But we think that each decision was correct according to the then existing law.

At the time of the decision in the case of *Bell v. Davis*, there was no exemption of a homestead; but the statutes provided merely that certain property might be retained for the use of the family—to be selected by the head of the family within certain specified limitations. So, under the statutes at that time, a claim or selection was necessary; whereas, since the Constitution of 1875 and the Code of 1876, while a claim and selection was still provided for, it was only necessary when the property desired to be claimed as exempt had to be identified and selected from other property not exempt. On the other hand, if the owner did have personal or real property in excess of that exempted to him by the Constitution and statutes, then, of course, the duty evolved upon him to select that which the law allowed him as exempt, in order that the remainder could be subjected by his creditors. The exemptioner would not be allowed to hold a mass of property, in excess of exemption rights, and thus prevent his creditors from subjecting any of it to sale under legal process against him.

[Stephen-Putney Shoe Co. v. White, et al.]

Of course, if a resident of Alabama should move out of the state permanently, he would not be within the protection of the Constitution or statutes, as it extends only to residents. Or, if he should abandon his homestead, remaining in the state, his right of exemption thereto would be lost, unless he conformed to the requirements of the statute made and provided for such cases, because it would not be his homestead. The statute under consideration exempts only the homestead, though there are other statutes which exempt certain lands in lieu of a homestead; but these are of no importance in the case under discussion.

As to the necessity of making a formal selection of the homestead, it has been uniformly held that the same rule prevails that governs in the selection of personal property or chattels which are exempt. And speaking of the necessity and propriety of making a formal claim as to personal property exempt, Brickell, C. J., said: "There can be no doubt that, if a debtor owns personal property exceeding in value $1,000, the law casts upon him the duty of selecting that which he will retain, exempt from levy and sale under legal process for the payment of debts. * * * But if he has not personal property, exceeding in value $1,000, a selection is unnecessary. There is neither room nor reason for it. The law intervenes and attaches the right of exemption, without the doing of any act on his part—attaches the exemption as absolutely and unconditionally as if the particular property was specially designated and declared exempt. For the policy and spirit of the Constitution is that personal property shall be absolutely exempt, unless the debtor owns of that species property exceeding in value $1,000."—*Alley v. Daniel,* 75 Ala. 405, 406.

This language has been often quoted by this and other courts, and applied to homestead exemptions, as well as to personalty, and also to the homestead exemption rights of widows and minors in the estate of the deceased father or husband. Mr. Thompson, in his work on Homesteads and Exemptions (section 652), says: "It is a familiar maxim that the law does not require a person to do an impossible nor a vain thing, and that a necessary application of this maxim is that, where all the land which a debtor has embraces his family homestead and is within the statutory requirement of area and value, he is not required, in order to save his right of homestead, to exercise an act of selection; * * * for the exercise of such an act under the circumstances would not only be useless, but impossible." And in the same section the writer adds: "The same principle applies under statutes exempting property from execution."

The provision of the Constitution of Michigan (Const. 1908, art. 14, § 2) is very similar to that of our Constitution; it being as follows: "Every homestead not exceeding forty acres of land, and dwelling house thereon and appurtenances, *to be selected by the owner thereof,* shall be exempt." The Supreme Court of Michigan, in construing the provision, where the homestead did not exceed in area or value that fixed by the Constitution and statute, held that there was nothing to select from; that the question was the entire thing or nothing; that in such case no selection in any sense of the term was required, by either the Constitution or the statute. The court held that the phrase "to be selected" signified to choose or take some particular part or number from a greater; to take by preference from among others; to pick out; to cull; that it did not express a mere election or option whether to take anything or nothing; to insist

[Stephen-Putney Shoe Co. v. White, et al.]

upon, or to waive, a right.—Thomp. on Homestead & Exemptions, § 653.

This is undoubtedly the interpretation we have given to our constitutional provision. And where the whole tract owned and occupied by the debtor does not exceed the area mentioned in the Constitution, and is admittedly within the prescribed valuation, the law, in the absence of any proof, must presume the acceptance by the debtor of the benefit conferred by the Constitution, to the full amount of the exemption; this being the ground upon which the acceptance of a grant is presumed—because of benefit to the grantee. The Constitution and statutes contemplate a selection only when it is necessary to bring the homestead within the limitations as to area or value, and as a method of separating it from a tract of larger area or of greater value, and to thus define its boundaries.—*Beecher v. Baldy,* 7 Mich. 488; *Thomas v. Dodge,* 8 Mich. 51.

It should be observed that in this case we are speaking of the necessity of making, filing, or interposing a claim of exemption in order to prevent the title from passing by execution or judicial sale of the exempt property, and not of the necessity of such a claim in order to support an action against an officer or the plaintiff in process for levying upon or taking such exempt property under legal process against the exemptioner. The propriety or necessity of making, filing, or interposing the claim on the part of the exemptioner is not the same in the two cases, because we have statutes which are intended to fix the rights and liabilities of the parties and officers executing the process as to exempt property. We are not in this case treating of the duties or liabilities of officers or plaintiffs in the process of levying upon or taking exempt property under such process.

7—172.

We do not think that the omission of the name of the husband from the certificate of the separate acknowledgment of the wife rendered the acknowledgment or conveyance void. The name of the husband did appear as grantor in the body of the deed, and appeared therein as the husband of the married woman who was acknowledging it, and the acknowledgment thus sufficiently identifies the husband, to prevent the certificate of acknowledgment from being void. The facts of this case distinguish it from the case of *Penny v. Mortgage Co.,* 132 Ala. 357, 31 South. 96. The opinion in that case shows that, if the certificate (therein) had contained the recitals which this certificate contains, it would have been aided by reference to the body of the conveyance and thereby made sufficient.

Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.